IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| EUNA McGRUDER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:17-cv-01547 |
| | ) | Judge Richardson |
| METROPOLITAN GOVERNMENT OF | ) | Magistrate Judge Holmes |
| NASHVILLE AND DAVIDSON COUNTY, | ) | |
| | ) | |
| Defendant. | ) | |

**METRO'S MEMORANDUM OF LAW IN SUPPORT OF
ITS MOTION FOR SUMMARY JUDGMENT**

ARGUMENT

Dr. McGruder was employed with Metro Nashville Public Schools ("the School System"), from July 2015 to January 2016, as the Executive Officer of Priority Schools. (Compl., Doc. No. 1, at 2-3.) Her employment was terminated (non-renewed) on January 15, 2016. (1/15/16 letter of nonrenewal, bates "Dr. McGruder 0064," Doc. No. 18-1.)[1] Dr. McGruder alleges that her termination was the result of race discrimination and retaliation in violation of Title VII. (Compl., Doc. No. 1, at 5-6.)

---

[1] The discovery materials produced by Plaintiff Dr. McGruder are bates numbered "Dr. McGruder 0001," *et seq*. The discovery materials produced by Metro are bates numbered "Schools 0001," *et seq*. The parties agree that all such materials are authentic. (Req. to Admit, Doc. 18-2, PageID# 64.)

# I. DISCRIMINATION.

## A. No *prima facie* case.

To establish a *prima facie* case of race discrimination, Dr. McGruder must show that she was "(1) a member of a protected class, (2) subject to an adverse employment action, (3) qualified for the position, and (4) replaced by a person outside the protected class or treated differently than similarly-situated employees outside the protected class." *Ashford v. Tennessee Bd. of Regents*, No. 3:16-CV-1032, 2017 WL 5884789, *2 (M.D. Tenn. Nov. 29, 2017) (TRAUGER, J.) (citations omitted); *see also, Hannon v. Louisiana-Pac. Corp.*, No. 3:17-CV-00922, 2018 WL 6102940, *6 (M.D. Tenn. Nov. 21, 2018) (RICHARDSON, J.) (sex discrimination case) (similar analysis under Title VII).

Dr. McGruder's claim fails under element (4) because she cannot show that she was replaced by a person outside her protected class, or was treated differently than any similarly-situated employees.

### 1. Dr. McGruder was replaced by an African-American employee.

Dr. McGruder was replaced in her role as Executive Officer of Priority Schools by Dr. Dorothy Gunn. (*See* org. charts dated 9/22/2015 & 3/17/2016, Doc. Nos. 18-4 & 18-5, showing Dorothy Gunn replacing Euna McGruder.) Dr. Dorothy Gunn is also an African-American female. (Bryant Decl., Doc. No. 18-3, ¶ 4.) Therefore, Dr. McGruder cannot make any showing that the person who replaced her was outside of her protected class, and, therefore, she cannot take this approach to prove element (4).

### 2. No similarly-situated comparators.

A plaintiff must show that "all of the relevant aspects of his employment situation were 'nearly identical' to those of the [comparable employee's] employment situation.' " *O'Donnell v.*

*City of Cleveland*, 838 F.3d 718, 727 (6th Cir. 2016), *cert. denied* (2017), quoting *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998).

"For example, the comparables 'must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'" *O'Donnell* at 727, quoting *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992).

Dr. McGruder alleges in her Complaint that "Plaintiff was treated differently than similarly situated white employees by Defendant" (Compl., Doc. No. 1, ¶ 35), but she does not allege, and cannot advance any evidence of, any specific comparators to support such a claim. She cannot make any showing of another School System employee who engaged in the same level of rude and unprofessional conduct toward her co-workers, as Dr. McGruder engaged in, but who was treated more favorably.

In fact, the School System's documentation from the fall of 2015 shows multiple incidents of Dr. McGruder berating, threatening to fire, or otherwise behaving rudely to her subordinates, and acting unprofessionally towards her peers:

- Early fall 2015 semester- where Dr. McGruder's first secretary took a lower paying job in order to transfer out of Dr. McGruder's office, citing unrealistic demands and a hostile work environment. (Steele 12/21/15 email, Doc. No. 18-6, PageID# 81, second paragraph.)

- Early fall 2015 semester- where Dr. McGruder picked up Justin Uppinghouses' iPad off of a display table just to "teach Justin a lesson," and where Dr. Steele describes how this

bad move on the part of Dr. McGruder spread "like wildfire" among the principals (Steele 12/21/15 email, Doc. No. 18-6, PageID# 81, second paragraph.)

- Early fall 2015 semester- where Dr. Gunn resigned, citing several incidents of unrealistic expectations and unprofessional attitude from Dr. McGruder. (Gunn 12/23/15 email and memo., Doc. No. 18-6, PageID## 83-86; *see also* Steele 12/21/15 email placing the time frame as early fall 2015 semester, Doc. No. 18-6, PageID# 81, third paragraph.)

- Early fall 2015 semester- where Dr. McGruder placed unrealistic demands upon Principal Brodien and threatened to fire her. (Brodien 12/23/15 email, Doc. No. 18-6, PageID## 87-88.)

- October 14, 2015- where Dr. McGruder's second secretary, Ms. Ivey, went on medical leave, citing a hostile work environment created by Dr. McGruder. (Baker witness statement, Doc. No. 18-6, PageID# 69; Murphy witness statement, Doc. No. 18-6, PageID# 70; Dr. McGruder's statement about the Ms. Ivey incident, Doc. No. 18-6, PageID# 71; *see also* Steele 12/21/15 email, Doc. No. 18-6, PageID# 81, fourth paragraph.)

- Early November 2015- where Dr. McGruder confronted one of her peers, Dr. Antoinette Williams, for talking with one of her principals, leading to Dr. McGruder screaming at Dr. Williams and Dr. Williams ending the call as a result. (Williams 1/4/16 email, Doc. No. 18-6, PageID# 91.)

- Early December 2015- where Dr. McGruder placed unrealistic expectations upon the Principal regarding the evaluation process and that particular school's budget, and being very abrupt in the process. (McVicker 1/7/16 email, Doc. No. 18-6, PageID## 93-95.)

- December 2, 2015- where Dr. McGruder made an unannounced visit to Madison Middle school, at the end of the day when school was letting out, and placed unrealistic demands

upon the staff and made rude and unprofessional remarks to them in the process. (Lorton 12/9/15 email and documentation, Doc. No. 18-6, PageID## 78-80.)

Because Dr. McGruder cannot make any showing of another School System employee who engaged in the same level of rude and unprofessional conduct but whose employment was not terminated, she cannot use this approach to prove element (4) either.

Therefore, she cannot present a *prima facie* case of discrimination.

### B. Legitimate, non-discriminatory reasons for the termination.

In addition, the fact that Dr. McGruder engaged in such rude and unprofessional behavior, as discussed above, constitutes a legitimate, non-discriminatory reason for her employment termination. (Henson Decl., Doc. No. 18-7, ¶ 4, then-Interim Director of Schools, where he explains that Dr. McGruder's termination had nothing to do with racial or retaliatory animus but was instead brought on by the many complaints lodged against her by other district employees regarding her unprofessional conduct.) *E.g., Leligdon v. McDonald*, 2016 WL 10590098, *17 (N.D. Ohio 2016) (rude and unprofessional behavior is a legitimate, non-discriminatory reason for adverse employment actions).

Furthermore, Dr. McGruder cannot advance any evidence to show that these reasons for her termination are simply a pretext, or a ruse, in order for Metro to cover up its true desire, as she sees it, to discriminate against her based on her race.

Accordingly, Metro is entitled to summary judgment on Dr. McGruder's race discrimination claim.

## II.  RETALIATION.

To prevail on a retaliation claim, a plaintiff must be able to prove that (1) she engaged in a activity protected by Title VII; (2) her exercise of such protected activity was known by the defendant; (3) thereafter, the defendant took an action that was materially adverse to the plaintiff; and (4) a causal connection existed between the protected activity and the materially adverse action. *Mallory v. Caterpillar Fin. Servs. Corp.*, No. 3:16-CV-00639, 2017 WL 1545559, *7 (M.D. Tenn. Apr. 28, 2017)(CRENSHAW, C.J.), citing *Laster v. City of Kalamazoo*, 746 F.3d 714, 730 (6th Cir. 2014).  To satisfy element (4), a plaintiff must prove "but-for" causation under *Nassar*.  *Mallory* at *7; *Gregory v. Lowe's*, No. 3:15-CV-00988, 2017 WL 2181552, *8–10 (M.D. Tenn. May 18, 2017)(CRENSHAW, C.J.).

### A.   No *prima facie* case.

Dr. McGruder cannot make a "but-for" causal connection here because, as discussed above under Section I.B., the reasons for her nonrenewal had nothing to do with "retaliation" but instead had to do with her inability to develop professional relationships – with all of the complaints having been lodged against her, and thoroughly documented, several weeks *before* she voiced any concerns about discrimination.  (*See* Compl., Doc. No. 1, ¶ 16, where she alleges that she made her concerns known on or about January 8, 2016; and Doc. No. 18-6, PageID## 69-95, where nearly all of the employment concerns about her, had been documented in mid- to late-December, and before January 8, 2016.)

Dr. McGruder's arguments about causation are further undermined by the fact that management had already been counseling her on her unprofessional behavior throughout the fall semester -- well before January 8, 2016.  Dr. Steele, then-Chief over Academics (Chief Academic Officer, Doc. No. 18-5), met with Dr. McGruder three times in the fall of 2015 about

"her behavior with principals, secretaries, and other district office personnel": once after her first secretary quit, then again after Dr. Gunn resigned, then again when her second secretary quit citing a hostile work environment. (Dr. Steele's documentation for the new Interim Chief, Dr. Garcia, dated 12/21/15, as Dr. Steele was leaving the post, Doc. No. 18-6, PageID# 81.)

### B. Legitimate, non-retaliatory reasons.

Additionally, even if we were to assume for purposes of summary judgment that Dr. McGruder could present a *prima facie* case based solely upon temporal proximity – i.e., based upon the fact that her employment was terminated on January 15, 2016, a week after she voiced her concerns on January 8 -- the fact that Dr. McGruder engaged in such rude and unprofessional behavior constitutes a legitimate, non-retaliatory reason for her termination. (Henson Decl., Doc. No. 18-7, ¶ 4: Dr. McGruder's termination was not based on retaliatory animus but, rather, was based upon the multiple complaints against her from other district employees.)

In addition, Dr. McGruder cannot advance any evidence to show that the reasons for her termination are simply a pretext when, as discussed above, the complaints against her had arisen and were being documented several weeks before she voiced her concerns on January 8. (Compl., Doc. No. 1, ¶ 16, January 8, 2016 *compared with*; Doc. No. 18-6, PageID## 69-95, where nearly all of the complaints against her, including Dr. Steele's three counseling sessions with her, had been documented in December.)

Again, any arguments that Dr. McGruder wishes to make about pretext are undermined by the fact that the then-chief, Dr. Steele, had already met with her three times about her unprofessional conduct during the fall semester -- well before January 8, 2016. (Doc. No. 18-6, PageID# 81, 12/21/15 email, recounting Dr. Steele's meetings with Dr. McGruder about "her behavior with principals, secretaries, and other district office personnel.")

Accordingly, Dr. McGruder cannot advance any evidence that the School System's reasons for her nonrenewal are simply made up in order to cover up its true desire, as she sees it, to retaliate against her, and, therefore, Metro is entitled to summary judgment on Dr. McGruder's retaliation claim.

## CONCLUSION

For the foregoing reasons, Metro is entitled to summary judgment, and this case should be dismissed.

Respectfully submitted,

DEPARTMENT OF LAW OF THE
METROPOLITAN GOVERNMENT OF
NASHVILLE AND DAVIDSON COUNTY
JON COOPER, #023571
Director of Law

/s/ *J. Brooks Fox*
J. Brooks Fox, #16096
Metropolitan Attorney
Suite 108 Metropolitan Courthouse
Post Office Box 196300
Nashville, Tennessee 37219– 6300
(615) 862-6375

Certificate of Service

This is to certify that a copy of the foregoing was served via the court's CM/ECF system to Brian C. Winfrey, 810 Broadway, Suite 105, Nashville, TN 37203, on December 2, 2018.

*/s/ J. Brooks Fox*
J. Brooks Fox