IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| EUNA MCGRUDER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) NO. 3:17-cv-1547 |
| v. | ) JUDGE RICHARDSON |
| | ) |
| METROPOLITAN GOVERNMENT OF | ) |
| NASHVILLE AND DAVIDSON | ) |
| COUNTY, | ) |
| | ) |
| Defendants. | ) |

# MEMORANDUM OPINION

Pending before the Court is Defendant's Motion for Summary Judgment (Doc. No. 18). Plaintiff has filed a Response (Doc. No. 28), and Defendant has filed a Reply (Doc. No. 32).

# BACKGROUND[1]

Plaintiff McGruder, who is African-American, was employed with the Metro Nashville Public Schools, from July 2015 to January 2016, as the Executive Officer of Priority Schools. Her employment was terminated (non-renewed) on January 15, 2016. Defendant's articulated reason for Plaintiff's termination was that she had engaged in rude and unprofessional behavior, resulting in "many complaints lodged against her" by other employees. Plaintiff disputes this reason and asserts that she was fired for "unlawful discriminatory and retaliatory motives." Plaintiff brought this action pursuant to 42 U.S.C. § 2000e, *et seq.* ("Title VII"), alleging race discrimination and retaliation. Defendant has moved for summary judgment on both of Plaintiff's claims.

---

[1] Where stated without qualification, the facts in this section are based upon the parties' respective responses to the other party's Statement of Material Facts (Doc. Nos. 27 and 33). That is, they are facts asserted by one party and not disputed by the other. This section also indicates where the parties are not, or not necessarily, in agreement regarding particular facts.

Plaintiff asserts in her Complaint, and Defendant has admitted (Doc. No. 9), the following facts. "Priority Schools" are those schools in the bottom 5 percent statewide in academic performance. (Doc. No. 26-2). As Executive Officer of Priority Schools, Plaintiff's goals included raising those schools out of the "priority schools" classification, identifying and recruiting high-level school leaders, and improving teacher recruitment and academic achievement in general. (Doc. No. 1 at ¶¶ 7-8). Madison Middle School was a Priority School. (Doc. No. 26-1 at ¶ 19).

In November of 2015, Defendant received a complaint, via its Compliance Hotline, of discrimination regarding Madison Middle School, alleging that black students were receiving from the principal harsher punishments than were white students. (Doc. No. 26-7). Plaintiff was asked to investigate this complaint. (*Id*.). Plaintiff has stated (in her Declaration) that she found numerous incidents of discriminatory treatment and discipline of black students by school administrators, concerns from teachers about unprofessional conduct and poor leadership of the school principal, and claims that the school was a hostile place to work. (Doc. No. 26-1 at 26-28 and 31). Plaintiff reported her findings to Defendant on or about January 8, 2016, (Doc. No. 31) and she was fired on January 15, 2016. (Doc. No. 27 at ¶ 2).

Plaintiff filed this action on December 11, 2017, alleging race discrimination and retaliation against Defendant. (Doc. No. 1 at ¶¶ 27-37).

## SUMMARY JUDGMENT

Summary judgment is appropriate where there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

247-48 (1986). In other words, even if genuine, a factual dispute that is irrelevant or unnecessary under applicable law is of no value in defeating a motion for summary judgment. *See id.* at 248. On the other hand, "summary judgment will not lie if the dispute about a material fact is 'genuine[.]'" *Id.*

A fact is "material" within the meaning of Rule 56(c) "if its proof or disproof might affect the outcome of the suit under the governing substantive law." *Anderson*, 477 U.S. at 248. A genuine dispute of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Harris v. Klare*, 902 F.3d 630, 634-35 (6th Cir. 2018).

The party bringing the summary judgment motion has the initial burden of identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Pittman v. Experian Information Solutions, Inc.*, 901 F.3d 619, 627-28 (6th Cir. 2018). If the summary judgment movant meets that burden, then in response the non-moving party must set forth specific facts showing that there is a genuine issue for trial. *Id.* at 628.

A party asserting that a fact cannot be or genuinely is disputed—i.e., a party seeking summary judgment and a party opposing summary judgment, respectively—must support the assertion by citing to materials in the record, including, but not limited to, depositions, documents, affidavits or declarations. Fed. R. Civ. P. 56(c)(1)(A). On a motion for summary judgment, a party may object that the supporting materials\ specified by its opponent "cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). Upon such an objection, the proponent of the supporting material must show that the material is admissible as presented or explain how it could be presented in a form that would be admissible. *Thomas v. Haslam*, 303 F. Supp. 3d 585, 624 (M.D. Tenn. 2018); *Mangum v. Repp*, 2017 WL 57792 at \*\* 5 (6th Cir. Jan. 5, 2017) (citing Fed. R. Civ. P. 56(c) advisory committee's note to 2010 amendment).

The court should view the facts and draw all reasonable inferences in favor of the non-moving party. *Pittman*, 901 F.3d at 628. Credibility judgments and weighing of evidence are improper. *Hostettler v. College of Wooster*, 895 F.3d 844, 852 (6th Cir. 2018). As noted above, where there is a genuine dispute as to any material fact, summary judgment is not appropriate. *Id*. The court determines whether sufficient evidence has been presented to make the issue of fact a proper jury question. *Id*. The mere existence of a scintilla of evidence in support of the nonmoving party's position will be insufficient to survive summary judgment; rather, there must be evidence upon which the jury could reasonably find for the nonmoving party. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003).

## **RACE DISCRIMINATION**

Title VII prohibits an employer from discriminating against an employee because of his or her race, color, religion, sex or national origin. 42 U.S.C. § 2000e-2. To demonstrate discrimination, a plaintiff may use either direct or circumstantial evidence. Direct evidence is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions. *Rock v. T.N.H.D. Partners, LLC*, 833 F. Supp. 2d 802, 815 (M.D. Tenn. 2011).[2] Plaintiff has presented no direct evidence of discrimination.

To establish a *prima facie* case of discrimination through circumstantial evidence, a plaintiff must show that (1) she is a member of a protected group; (2) she was subjected to an adverse employment action; (3) she was qualified for the position; and (4) she was replaced by a person outside the protected class or similarly situated non-protected employees were treated more

---

[2] If the plaintiff has credible direct evidence of discrimination, the burden of persuasion shifts to the defendant to show that it would have terminated the employee even if it had not been motivated by impermissible discrimination. *Id.; see also McGee v. Food Warming Equipment*, No. 3-14-cv-01776, 2017 WL 587856, at * 2 (M.D. Tenn. Feb. 14, 2017).

4

favorably. *Haynes v. City of Clarksville,* No. 3:17-cv-01267, 2019 WL 109370, at * 3 (M.D. Tenn. Jan. 3, 2019) (citing *Vincent v. Brewer Co.*, 514 F.3d 489, 494 (6th Cir. 2007)). If a plaintiff establishes a *prima facie* case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions. If it does so, the burden returns to the plaintiff to show that the defendant's reason was a pretext for discrimination. *Sybrandt v. Home Depot U.S.A., Inc.*, 560 F.3d 553, 557-58 (6th Cir. 2009); *Monce v. Marshall Cty. Bd. of Educ.*, 307 F. Supp. 3d 805, 814 (M.D. Tenn. 2018).[3]

Defendant argues that Plaintiff's *prima facie* case fails under element four because she cannot show that she was replaced by a person outside her protected class or that she was treated differently from any similarly-situated non-protected employee(s). The fact that Plaintiff was replaced by another African-American weighs heavily against any inference that she was discriminated against as an African-American. *See Liu v. Indium Corp. of Am.*, 6:16-cv-01080, 2019 WL 3825511, at * 17 (N.D. N.Y. Aug. 15, 2019). Plaintiff does not dispute that her immediate replacement, in January 2016, was African-American. Plaintiff instead argues that her immediate replacement was only an "interim" Executive Officer of Priority Schools and that Plaintiff was actually replaced by a non-African-American in June 2016. Where a replacement of the same protected class was hired immediately following a plaintiff's termination and prior to the filing of a discrimination claim, it is extremely difficult, if not practically impossible, for a plaintiff to establish that her termination occurred under circumstances giving rise to an inference of

---

[3] To show pretext, a plaintiff may show that: (1) the proffered reason had no basis in fact, (2) the proffered reason did not actually motivate the action, or (3) the proffered reason was insufficient to warrant the adverse action. *Sybrandt*, 560 F.3d at 558. Throughout this burden-shifting approach, the plaintiff bears the ultimate burden of proving, by a preponderance of the evidence, the intent to discriminate. *Monce*, 307 F. Supp. 3d at 814.

discrimination. *Polanco v. Active Retirement Community, Inc.*, 14-cv-4145, 2016 WL 792408, at * 5 (E.D. N.Y. Feb. 29, 2016) (citing *Fleming v. MaxMara USA, Inc.*, 664 F. Supp. 2d 247, 261 (E.D. N.Y. 2009)). The Court sees no reason why this principle does not apply to an interim replacement as well as a permanent (*i.e.,* non-interim) replacement; the claim that an American-American plaintiff was fired due to racial animus against African Americans is undercut by the defendant replacing plaintiff with an African American on an interim basis for the same reasons, if not necessarily to the same extent, as it is undercut by the defendant replacing the plaintiff with an African American hired on a permanent basis.

Where, as here, a member of the plaintiff's protected class is contemporaneously hired as a replacement, the offering of "proof" of intentional discrimination appears extremely difficult, if not practically impossible. *Liu v. Indium Corp. of Amer.*, 2019 WL 3825511, at * 17; *Macias v. Barrier Free Living, Inc.*, 16 Civ. 1735, 2018 WL 1603566, at * 6 (S.D. N.Y. Mar. 28, 2018) (where replacement was member of plaintiff's protected class, plaintiff's ability to raise inference of discrimination severely cut). The Court finds that Plaintiff has not shown that she was replaced by someone outside her protected class.

However, Plaintiff may alternatively establish element four by showing that similarly situated, non-protected employees were treated more favorably than she was. Employees are "similarly situated" when they are similar in all relevant respects. *Redlin v. Grosse Pointe Public School Syst.*, 921 F.3d 599, 610 (6th Cir. 2019) (citing *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1994)). In deciding whether two employees are similarly situated under this standard, factors to consider include whether the individuals dealt with the same supervisor, were subject to the same standards, and engaged in the same conduct without such

differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it. *Louzon v. Ford Motor Co.*, 718 F.3d 556, 563 (6th Cir. 2013).

Defendant argues that Plaintiff cannot identify any specific comparators who engaged in the same behavior[4] but were treated more favorably. But Plaintiff contends that the principal of Madison Middle School, Kelli Lorton, is a similarly situated, Caucasian comparator. Plaintiff claims that she and Lorton are similarly situated because they both worked as executive-level administrators and were both reported to have engaged in rude and unprofessional conduct. Plaintiff was an Executive Officer, directly under the Chief of Leadership and Learning in the Metro Schools hierarchy. (Doc. No. 18-4). Lorton was a school principal. The Court cannot find Ms. Lorton's name anywhere, let alone at the same executive level as Plaintiff, on the organization chart for the Chief Academic Officer. (*Id.*). In fact, Plaintiff claimed to be Lorton's supervisor (Doc. No. 26-11 at 5), and Lorton was subject to discipline by Plaintiff. (Doc. No. 26-11; Doc. No. 28 at 7-8). Plaintiff herself claims that she received complaints of rude and unprofessional conduct by Lorton, another indication that she was Lorton's supervisor.[5] Moreover, in yet another such indication, she has complained that Lorton failed to comply with Plaintiff's "directives" to meet with Plaintiff. (Doc. No. 26-9 at 1-2).[6] If Plaintiff *was* Lorton's supervisor as it appears, Plaintiff and Lorton clearly did not report to the same supervisor.

---

[4] Defendant cites to numerous incidents of Plaintiff berating, threatening to fire, or otherwise behaving rudely to her subordinates and acting unprofessionally toward her peers in the fall of 2015. (Doc. No. 19 at 3-4). Plaintiff disputes these reported incidents (Doc. No. 27 at ¶ 5), although she provides no citation to support her dispute.

[5] This claim was made to bolster one aspect of her argument that she and Lorton were similarly situated, but it hurts her argument in another aspect (*i.e.*, whether she and Lorton had the same supervisor.

[6] Plaintiff describes Lorton's asserted justification for non-compliance not as an assertion that she (Lorton) was not generally required to comply with Plaintiff's directives, but rather that "Human

Even if Plaintiff's and Lorton's behavior was similar, it does not make them similarly situated for purposes of element four. Plaintiff and Lorton were different in more than simply their job titles. Their job duties were different. Plaintiff stated that her position was created specifically to dedicate an executive officer to support, assist, and develop "turnaround plans" for improving the academic performance at priority schools. (Doc. No. 26-1 at ¶ 12). She was held accountable for improving the performance at twelve priority schools. (*Id.* at ¶ 14; Doc. No. 26-2). Lorton was the principal at one school. Plaintiff and Lorton were employed at different levels of the hierarchy at Metro Public Schools. Lorton worked at one school, as principal. Plaintiff worked school-system-wide, as an Executive Officer. Plaintiff and Lorton may have been subject to the same standards, policies, and employee handbook, as Plaintiff suggests, but that commonality by itself does not suggest that Plaintiff and Lorton are similarly situated any more than it suggests that Plaintiff was similarly situated to *all* Metro School System employees (which obviously she was not).

The Court finds that Defendant has carried its initial burden to show that Plaintiff cannot meet the requirement of element four to show discrimination. Plaintiff has not, in response, demonstrated a genuine issue of material fact, and Defendant is entitled to judgment as a matter of law on Plaintiff's race discrimination claim.

## **RETALIATION**

To establish a *prima facie* case of retaliation,[7] a plaintiff must show that (1) she engaged in protected activity; (2) the exercise of protected rights was known to the defendant; (3) the

---

Capital" had told Lorton she did not have to meet with Plaintiff since Plaintiff had made claims against her. (Doc. No. 26-9 at 2).

[7] Plaintiff avers that she has direct evidence of retaliation, which is analyzed under a slightly different standard, but the statement she cites (Doc. No. 28 at 18 (citing Doc. No. 26-1 at ¶ 36)) is

defendant took an adverse employment action against her, and (4) there was a causal connection between the protected activity and the adverse action. *Taylor v. Geithner*, 703 F.3d 328, 336 (6th Cir. 2013). To establish a causal connection, the plaintiff must produce sufficient evidence from which one could draw an inference that the defendant would not have taken the adverse employment action had she not engaged in activity protected under Title VII. *Taylor*, 703 F.3d at 339. In *Univ. of Texas Southwestern Med. Center v. Nassar*, 570 U.S. 338 (2013), the Court held that a plaintiff making a Title VII retaliation claim must establish that her protected activity was a "but-for" cause of the alleged adverse action by the employer. *Id*. at 361. Once a *prima facie* showing is made, the defendant must articulate a legitimate nonretaliatory reason for its action, and then the burden shifts back to the plaintiff to show that the proffered reason was not its true reason but merely a pretext for retaliation. *Harris v. Metropolitan Gov't of Nashville and Davidson Cty.*, 594 F.3d 476, 485 (6th Cir. 2010).

Defendant argues primarily that Plaintiff cannot establish causation, the fourth element of the retaliation claim. In its Reply, however, Defendant does raise the issue of whether Plaintiff actually engaged in protected activity. The Court must determine this issue,[8] whether Plaintiff engaged in protected activity, first. Title VII prohibits retaliation against an employee "because he

---

not sufficient to be direct evidence of retaliation. She claims that another Executive Officer, whose recommendation allegedly prompted Plaintiff's termination, stated the following in Plaintiff's termination meeting: "With everything you were saying about Madison [Middle School] and Kelli [Lorton], we just thought it was in the best interest of everybody to go a different direction." (*Id*.). But this brief, isolated statement, devoid of context, is too ambiguous to constitute direct evidence of retaliation. By its terms, it refers more to concerns about the content of Plaintiff's remarks about Madison Middle School and Kelli Lorton, but it does not indicate what the Executive Officer personally perceived those remarks to be or that she perceived them to be problematic because they amounted to complaints about Madison Middle School and Lorton.

[8] Whether or not it was proper for Defendant to first raise this issue in its reply brief rather than its initial brief, the Court feels constrained to address this issue and would have raised it *sua sponte* even if Defendant had not raised it.

has opposed any practice made an unlawful employment practice by [Title VII]." 42 U.S.C. § 2000e-3; *Kim v. Harvey*, 463 F. Supp. 2d 716, 732 (E.D. Mich. 2006). In other words, "protected activity" includes opposition to employment practices prohibited under Title VII. *Bakkhtiari v. Lutz*, 507 F.3d 1132, 1137 (8th Cir. 2007) (no protected activity because activities of plaintiff related to his status as a student, not an employee).

Here, Defendant received a complaint alleging that black students at Madison Middle School were receiving, from the principal, harsher punishments than white students were. (Doc. No. 26-7). Plaintiff was asked to investigate this complaint. (*Id.*). The complaint was about the treatment of *students*, not employees. Plaintiff later reported on and complained about conditions at Madison Middle School, but those complaints were not about Title VII violations. They were complaints about racial discrimination by administrators toward students and the unprofessional, ineffective conduct of the principal. Plaintiff also complained about the insubordinate behavior of two employees of the school toward her, but she does not allege that the insubordinate behavior was based upon race or constituted an adverse employment action. These complaints may concern important issues, but they do not concern matters implicated by Title VII.

The statements presented by Plaintiff in response to Defendant's Motion allege multiple incidents of Principal Lorton berating students and employees, poorly performing her job, behaving rudely to her subordinates, and acting unprofessionally towards her peers. (Doc. No. 33 at 3). The complaints Plaintiff identified about the way the principal treated students may be based upon race, but the complaints about how Lorton treated employees, as opposed to students, have nothing to do with race. Rather, Plaintiff contends that Lorton was rude, unprofessional, unresponsive, never visible, and never communicative; stayed in her office most of the day; did not support staff; was not proactive; did not listen; and gave no guidance. (*Id.* at 3-5). *See Welzel*

*v. Bernstein*, 436 F. Supp. 2d 110, 122 (D. D.C. 2006) (holding that the plaintiff, an employee of the defendant, was not opposing discrimination as required under Title VII when she objected to verbally abusive conduct not based upon a protected category).

The problem, therefore, is that Plaintiff's attempts to raise awareness about the racial issues at Madison Middle School had to do with *students*, not employees. Her complaints did not concern any employment policy by the Metro School System. *See Ferrill v. Oak Creek-Franklin Joint School Dist.*, 860 F.3d 494, 501 (7th Cir. 2017) (principal's efforts to raise students' awareness of racial issues not protected activity for purposes of Title VII retaliation claim); *Artis v. Francis Howell North Band Booster Ass'n, Inc.*, 161 F.3d 1178, 1183 (8th Cir. 1998) (employee's opposing employer's treatment of student unprotected by Title VII). Moreover, her complaints about the rude and unprofessional behavior of the principal, while condemning alleged inappropriate behavior, did not concern behavior based upon race or otherwise prohibited by Title VII.

In her EEOC Charge, Plaintiff stated "My investigation uncovered troubling violations of black students civil rights." (Doc. No. 31). The Charge does not mention racial discrimination against employees; instead, it identifies issues "related to the management of the school." (*Id.*) Likewise, in her timeline, she asserts the existence of a "hostile work environment" but does not frame the hostility as based on race (or, for that matter, any other protected classification implicated by Title VII). (Doc. No. 26-9 at 2).

In short, Plaintiff reported alleged *racial discrimination* against *students*, and *non-racial poor treatment* of *employees*. But she has not shown evidence that she reported *racial discrimination* against *employees*. Therefore, Plaintiff has not demonstrated a genuine issue of material fact as to the first element of her Title VII retaliation claim, *i.e.*, that she engaged in

11

protected activity. Therefore, the Court need not address the other elements. Defendant is entitled to summary judgment on Plaintiff's retaliation claim, and that claim will be dismissed.

## CONCLUSION

For these reasons, Defendant's Motion for Summary Judgment (Doc. No. 18) will be granted, and this action will be dismissed.

IT IS SO ORDERED.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE