# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| EUNA McGRUDER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | **Case No. 3:17-cv-01547** |
| vs. ) | **Judge Campbell** |
| ) | |
| METROPOLITAN GOVERNMENT ) | |
| OF NASHVILLE AND DAVIDSON ) | |
| COUNTY, TENNESSEE ) | |
| ) | |
| Defendant. ) | |

### METRO'S *CORRECTED* MEMORANDUM IN SUPPORT OF ITS MOTION TO REVISE ORDERS
[Fed. R. Civ. P 54(b)]

The Metropolitan Government respectfully requests that this Court revise its December 9, 2021, Order (Doc. No. 79) announcing the jury verdict in favor of Plaintiff in this matter and, instead, enter a dismissal with prejudice of Plaintiff's claims on the grounds of judicial estoppel. Further, because no final order has been entered in this case, Metro requests that all post-verdict orders previously entered be similarly revised to reflect a dismissal of Plaintiff's claims with prejudice, and that any pending or future motions requesting relief by the Plaintiff be denied as moot.

### Legal Standard

Under FED. R. CIV. P. 54(b), "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Under this rule, the reference to "any order or other decision, however designated" includes jury verdicts as well as court orders. *Thompson v. Trent Mar. Co.,* 343 F.2d 200, 203 (3d Cir.1965).

The Sixth Circuit recognizes that "[d]istrict courts have authority both under common law and Rule 54(b) to reconsider interlocutory orders and to reopen any part of a case before entry of final judgment." *Smith v. CoreCivic, Inc.*, 2022 WL 3051226, at *2–3 (M.D. Tenn. Aug. 2, 2022) (TRAUGER, J.) (citing *Rodriguez v. Tenn. Laborers Health & Welfare Fund*, 89 F. App'x 949, 959 (6th Cir. 2004); *see also Mallory v. Eyrich,* 922 F.2d 1273, 1282 (6th Cir. 1991) ("A district court may modify, or even rescind, such interlocutory orders."); *In re Saffady*, 524 F.3d 799, 803 (6th Cir. 2008) ("[D]istrict courts have inherent power to reconsider interlocutory orders and reopen any part of a case before entry of a final judgment", even *sua sponte*).

"Traditionally, courts will find justification for reconsidering interlocutory orders when there is (1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice." *Rodriguez*, 89 F. App'x at 959.

**Argument**

Plaintiff filed her lawsuit in this case in December of 2017. (Complaint, Doc. No. 1.) Yesterday, Metro discovered that, a few months *after* filing her complaint, Plaintiff filed for Chapter 7 bankruptcy in a federal court outside of the forum jurisdiction of this matter – the United States Bankruptcy Court in the Northern District of Georgia, Atlanta Division. *See attached* (Ex. 1, Voluntary Petition for Chapter 7 Bankruptcy, *In Re: Euna McGruder*, Case No.: 18−60740−lrc.) In her petition Plaintiff disclosed some of her assets, (Ex. 1 at 15-19), but she failed to disclose her interest in this case. As analyzed below, this new evidence supports a dismissal with prejudice on the grounds of judicial estoppel.

**I.      Judicial Estoppel in the Bankruptcy Context.**

A debtor in a bankruptcy proceeding must disclose *all* assets, including a potential cause of action. 11 U.S.C. § 521(a); *Eubanks v. CBSK Fin. Grp., Inc.*, 385 F.3d 894, 897 (6th Cir. 2004). Indeed, "The disclosure obligations of consumer debtors are at the very core of the bankruptcy

{N0491843.1}                                              2

Case 3:17-cv-01547    Document 126    Filed 08/31/22    Page 2 of 8 PageID #: 2517

process and meeting these obligations is part of the price debtors pay for receiving the bankruptcy discharge." *Lewis v. Weyerhauser Co.*, 141 F. App'x 420, 424 (6th Cir. 2005) (cleaned up). "Moreover, [t]he duty of disclosure is a continuing one, and a debtor is required to disclose all potential causes of action." *Id*. at 424.

"The doctrine of judicial estoppel generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *White v. Wyndham Vacation Ownership, Inc.*, 617 F.3d 472, 476 (6th Cir. 2010) (cleaned up). "This doctrine is utilized in order to preserve the integrity of the courts by preventing a party from abusing the judicial process through cynical gamesmanship." *Id*. (cleaned up). To that end, in the bankruptcy context, the doctrine will "bar[] claims not disclosed in prior bankruptcy proceedings where (1) the debtor assumes a position contrary to the one asserted under oath while in bankruptcy; (2) the bankruptcy court adopted the contrary position either as a preliminary matter or as a part of final disposition; and (3) the debtor's omission did not result from mistake or in advertence." *Brown v. Electrolux Home Prod., Inc.*, 2020 WL 291373, at *2 (M.D. Tenn. 2020) (CAMPBELL, J.).

> **A.** ***Plaintiff assumed a position contrary to the one she asserted under oath in her bankruptcy case.***

Failing to report an interest in a cause of action is sufficient to establish the first prong of the above-stated test for judicial estoppel. *Lewis*, 141 F. App'x at 425 (where plaintiff filed an EEOC charge one month after bankruptcy plan was confirmed, failure to report cause of action in bankruptcy court supported judicial estoppel); *White*, 617 F.3d at 479; *Kimberlin v. Dollar Gen. Corp.*, 520 F. App'x 312, 314 (6th Cir. 2013). Here, Plaintiff pursued a claim against Metro for over a million dollars while simultaneously failing to report her claim to the bankruptcy court in

Georgia. (Trial Tr. Vol. IV, Doc. No. 96 at 160.) In fact, Plaintiff did not simply fail to disclose her cause of action, she affirmatively denied its existence at least three times in her petition:

**Part 4: Identify Legal Actions, Repossessions, and Foreclosures**

9. Within 1 year before you filed for bankruptcy, were you a party in any lawsuit, court action, or administrative proceeding? List all such matters, including personal injury cases, small claims actions, divorces, collection suits, paternity actions, support or custody modifications, and contract disputes.

☒ No
☐ Yes. Fill in the details.

| Case title / Case number | Nature of the case | Court or agency | Status of the case |
|---|---|---|---|

Ex. 1 p. 10

**Part 12: Sign Below**

I have read the answers on this *Statement of Financial Affairs* and any attachments, and I declare under penalty of perjury that the answers are true and correct. I understand that making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $250,000, or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

/s/ Euna McGruder
Euna McGruder
Signature of Debtor 1

Signature of Debtor 2

Date June 28, 2018

Ex. 1 pp. 13-14

30. Other amounts someone owes you
   *Examples:* Unpaid wages, disability insurance payments, disability benefits, sick pay, vacation pay, workers' compensation, Social Security benefits; unpaid loans you made to someone else
   
   ☒ No
   ☐ Yes. Give specific information..

Ex. 1 p. 18

33. Claims against third parties, whether or not you have filed a lawsuit or made a demand for payment
   *Examples:* Accidents, employment disputes, insurance claims, or rights to sue
   
   ☒ No
   ☐ Yes. Describe each claim.........

Ex. 1 p. 18

**Part 3: Sign Below**

Under penalty of perjury, I declare that I have indicated my intention about any property of my estate that secures a debt and any personal property that is subject to an unexpired lease.

X /s/ Euna McGruder
   Euna McGruder
   Signature of Debtor 1

X
   Signature of Debtor 2

Date June 28, 2018

Furthermore, Plaintiff's duty to disclose did not just apply to her bankruptcy filings. This Court also ordered the parties to exchange disclosures pursuant to Fed. R. Civ. P. 26(a)(1). (ICMO, Doc. No. 11.) Such initial disclosures were to include any "Claims, lawsuits, administrative charges, and complaints by the plaintiff that rely upon any of the same factual allegations or claims

as those at issue in this lawsuit." (*Id*. at 3.) Despite the onus placed upon her to report each of these cases to the respective courts in which she had filed, and despite her obligation to disclose this information to Metro, Plaintiff took no action to disclose such information to anyone. In short, Plaintiff took the position in this case that she was owed a large sum of money while simultaneously reporting to the bankruptcy court that she had no such interest. Therefore, Plaintiff assumed a position in this matter contrary to the one she asserted under oath in her bankruptcy case.

### B. The bankruptcy court adopted Plaintiff's inconsistent representation.

On October 8, 2018, the bankruptcy court entered an order discharging Plaintiff's debts and requiring no distribution to any of her creditors. (Ex. 2, Order of Discharge.) The order further explains that "The chapter 7 discharge order eliminates a debtor's legal obligation to pay a debt that is discharged. Most, but not all, types of debts are discharged if the debt existed on the date the bankruptcy case was filed." (*Id*. at 2.) Pursuant to that court's order over $100,000 in debts were discharged. (Ex. 3, McGruder Bankruptcy Docket Sheet at 3.) Thus, in discharging Plaintiff's debts, that court expressly relied upon and adopted Plaintiff's inconsistent representation that she had no interest in this instant cause of action.

### C. Plaintiff's omission was not the result of mistake or inadvertence.

In determining whether there was a mistake or inadvertence on the part of the debtor, courts must "consider whether '(1) [the debtor] lacked knowledge of the factual basis of the undisclosed claims; (2) she had a motive for concealment; and (3) the evidence indicates an absence of bad faith.'" *Id*. at 315 (*quoting White,* 617 F.3d at 478).

Here, Plaintiff cannot suggest that she lacked knowledge of her claim. She filed her cause of action in this Court a mere six months before filing her Chapter 7 petition. Further, she had filed

{N0491843.1}                                   5

Case 3:17-cv-01547   Document 126   Filed 08/31/22   Page 5 of 8 PageID #: 2520

an EEOC claim in May of 2016 asserting the same claims. In September of 2017, she received a notice of her right to sue from the EEOC. (Ex. 4, EEOC Dismissal and Notice of Rights.) So, Plaintiff had pursued this claim for over two years, she had been advised that she had a right to bring a federal lawsuit, and she had filed a lawsuit – all *before* filing her bankruptcy petition (in which she stated that no such claim existed). Thus, she had knowledge of the factual basis of her claim.

Furthermore, regarding a motive to conceal: "Courts generally consider that any Plaintiff who fails to disclose claims in bankruptcy has a motive for concealment: if the claim becomes part of the bankruptcy estate, then the proceeds could go toward paying her creditors, rather than going directly to the plaintiff." *Brown*, 2020 WL 291373 at *2. Given that Plaintiff's bankruptcy action discharged over $100,000 in debt, Plaintiff not only had a motive to conceal this cause of action, but the motive was a substantial one.

Accordingly, as the first two elements can be established, Plaintiff must be able to show a lack of bad faith in her concealment. *Id*. at 3 (*citing White*, 617 F.3d at 478, n. 4.). "In determining whether there was an 'absence of bad faith,' the court must look, in particular, at [the debtor's] attempts to advise the bankruptcy court of her omitted claim." *Vaughn*, 2014 WL 234200 at *4 (*citing White*, 617 F.3d at 478). "Since the bankruptcy system depends on accurate and timely disclosures, the extent of these efforts, together with their effectiveness, is important." *White*, 617 F.3d at 480.

Here, it is evident from the record in Plaintiff's bankruptcy case that she made no efforts to advise the bankruptcy court of her omitted claim. (Ex. 3, McGruder Bankruptcy Docket Sheet.) The record reflects no amendments to her petition and no subsequent notice of additional assets. (*Id*.) Therefore, Plaintiff cannot claim now that, in the approximately 3 months that her bankruptcy

was pending, she made any attempts to advise the bankruptcy court of her omitted claim. Accordingly, Plaintiff cannot establish that her omission was the result of any mistake or inadvertence.

> **II. This Court Should Revise the Interlocutory Orders to Reflect a Dismissal of this Action and Dismiss Plaintiff's Claims with Prejudice.**

Plaintiff's maintenance of inconsistent statements in her bankruptcy case and this case threaten to affect a manifest injustice, not against Metro's interests, but against the interests of this Court and of the United States Bankruptcy Court (and to Plaintiff's creditors, who had claims totaling over $100,000 will see no benefit from Plaintiff's potential judgment proceeds). Specifically, Plaintiff filed a Chapter 7 "No Asset" bankruptcy while making a claim against Metro for a substantial sum of money. Such inconsistent statements represent an abuse of the judicial process, *White*, 617 F.3d at 476, which, on occasion, have been "colorfully described as the perversion of the judicial machinery." *Browning*, 283 F.3d at 776 (cleaned up). That is what is at stake in this matter.

Metro acknowledges that the timing of this motion is not ideal, but the out-of-circuit bankruptcy only came to its attention yesterday. Moreover, "Underlying the doctrine of judicial estoppel is the desire to protect the integrity of the judiciary, not individual litigants." *Teledyne Indus. v. N.L.R.B.,* 911 F.2d 1214, 1219–20 (6th Cir.1990). As such, even had Metro not raised the argument here (or even on appeal), this Court "could sua sponte consider whether judicial estoppel is appropriate under the facts presented." *DeMarco v. Ohio Decorative Prod., Inc.*, 19 F.3d 1432 (6th Cir. 1994). Thus, in the interest of preserving the integrity of the courts, and of preventing the manifest injustice of what the *White* court called "cynical gamesmanship," *White*, 617 F.3d at 476, and since no final order has been entered yet in this case, this Court should exercise its inherent

power to revise the orders in this matter to reflect a dismissal. "Though judicial estoppel may appear a harsh remedy, it is appropriate here." *Brown* 2020 WL 291373 at *4.

## Conclusion

For all of these reasons, Metro respectfully requests that this Court revise its December 9, 2021, Order (Doc. No. 79) announcing the jury verdict and, instead, enter a dismissal with prejudice of Plaintiff's claims on the grounds of judicial estoppel. Further, Metro requests that all post-verdict orders previously entered in this case be similarly revised to reflect a dismissal with prejudice, and that any pending or future motions requesting relief by the Plaintiff be denied as moot.

Respectfully submitted,

*/s/ J. Brooks Fox*
J. Brooks Fox, # 16096
Attorney for the Defendant
Metropolitan Courthouse, Suite 108
P.O. Box 196300
Nashville, Tennessee 37219-6300
(615) 862-6375

This is to certify that a copy of the foregoing was served via the court's CM/ECF system to: Brian Winfrey, The Winfrey Firm, 810 Broadway, Suite 500, Nashville, TN 37203, on August 31, 2022.

*/s/ J. Brooks Fox*
J. Brooks Fox